[Cite as *Sivit v. Village Green of Beachwood, L.P.*, 2016-Ohio-2940.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 103340 and 103498**

# CARLOS SIVIT, ET AL.

PLAINTIFFS-APPELLEES

vs.

# VILLAGE GREEN OF BEACHWOOD, L.P., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-08-671776

**BEFORE:** E.A. Gallagher, J., Keough, P.J. and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 12, 2016

**ATTORNEYS FOR APPELLANT**
**VILLAGE GREEN OF BEACHWOOD, L.P.**

Marvin L. Karp
Lawrence D. Pollack
Ulmer & Berne L.L.P.
Skylight Office Tower, Suite 1100
1660 West 2nd Street
Cleveland, Ohio 44113-1448

**ATTORNEYS FOR APPELLANT**
**DAVID GRUHIN AND SYDNEY SIGLER GRUHIN**

Michael H. Gruhin
Gruhin & Gruhin, L.L.C.
24100 Chagrin Boulevard, Suite 250
Beachwood, Ohio 44122

**ATTORNEYS FOR APPELLEES CARLOS SIVIT, SONYA PACE, JASON EDWARDS, RENEE EDWARDS, NATALIE RUDD, PRATHIBHA MARATHE, HALLIE GELB, MOHAMMAD MARWALI, SELVY PANGKEY, LUCIANA ARMAGANIJAN AND MITCHELL ROSENBERG**

Joseph W. Diemert, Jr.
Daniel A. Powell
Diemert & Associates Co., L.P.A.
1360 S.O.M. Center Road
Cleveland, Ohio 44124

EILEEN A. GALLAGHER, J.:

{¶1} In this consolidated appeal, defendant-appellant Village Green of Beachwood, L.P. ("Village Green") and plaintiffs-appellants David Gruhin and Sydney Sigler Gruhin (the "Gruhins") appeal from orders of the trial court (1) awarding the Gruhins and plaintiffs-appellees Carlos Sivit, Sonya Pace, Jason Edwards, Renee Edwards, Natalie Rudd, Prathibha Marathe, Hallie Gelb, Mohammad Marwali, Selvy Pangkey, Luciana Armaganijan and Mitchell Rosenberg (collectively, the "Sivit plaintiffs")[1] a total of $1,537,555.90 in punitive damages and (2) allocating those punitive damages equally among the Gruhins and nine other groups of individual plaintiffs (the "individual plaintiff groups"), i.e., allocating $153,755.59 in punitive damages to each individual plaintiff group.[2] Village Green claims that the trial court's punitive damages award exceeds the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a). The Gruhins contend that the trial court's per capita allocation of the punitive damages award violates R.C. 2315.21(D)(2)(a) and that, based on the statute, they should have been allocated a share of the punitive damages award equal to two times their compensatory damages, i.e., $222,466 instead of $153,755.59. For the reasons that

[1] The Gruhins and the Sivit plaintiffs are collectively referred to herein as the "individual plaintiffs." All of the individual plaintiffs were initially represented by the Diemert law firm; however, after an issue arose with respect to the allocation of the punitive damages award, the Gruhins terminated their relationship with that firm and retained separate counsel.

[2] The 13 individual plaintiffs were grouped into 10 individual plaintiff groups based on the 10 apartment units they occupied, as follows: Carlos Sivit, Sonya Pace, Jason and Renee Edwards, Natalie Rudd, Prathibha Marathe, Hallie Gelb, Mohammad Marwali and Selvy Pangkey, Luciana Armaganijan, Mitchell Rosenberg and the Gruhins.

follow, we affirm the trial court's judgment in part, reverse the trial court's judgment in part and remand the case for the trial court to enter an order setting the total amount of punitive damages awarded to the individual plaintiffs at $1,194,294, to be allocated equally among the ten individual plaintiff groups, i.e., $119,429.40 to each of the ten individual plaintiff groups.

**Factual and Procedural Background**

{¶2} Following a 2007 fire in the Village Green apartment complex in Beachwood, Ohio, the individual plaintiffs — tenants residing in ten apartment units that sustained property damage in the fire — filed suit against Village Green and Forest City Residential Management, Inc. ("FCRM") (collectively, the "defendants"). The individual plaintiffs alleged that the building had been negligently constructed and negligently maintained in violation of R.C. Chapter 5321, the Ohio Landlord-Tenant Act, and that this negligence caused the fire. Several subrogated insurers (collectively, the "insurer plaintiffs") filed separate lawsuits against the defendants related to the fire, and these actions were consolidated with the action filed by the individual plaintiffs.[3] The individual plaintiffs sought both compensatory and punitive damages. The insurer plaintiffs sought only compensatory damages.

{¶3} The case proceeded to trial, and the trial was bifurcated on issues of compensatory damages and punitive damages. Following the compensatory damages phase of the trial, the jury returned a verdict in favor of the plaintiffs and against the

---

[3] The insurer plaintiffs and the individual plaintiffs are collectively referred to herein as the "plaintiffs."

defendants on their negligence claims. The jury awarded a total of $582,146 in compensatory damages to seven groups of individual plaintiffs against the defendants as follows:

| | |
|---|---|
| Sonya Pace . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $214,873.00 |
| David and Sidney [sic] Gruhin . . . . . . . . . . . . . . | $111,233.00 |
| Carlos Sivit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $107,430.00 |
| Jason and Renee Edwards. . . . . . . . . . . . . . . . . . | $47,484.00 |
| Natalie Rudd . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $38,850.00 |
| Prathibha Marathe . . . . . . . . . . . . . . . . . . . . . . . | $35,020.00[4] |
| Hallie Gelb . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $27,256.00 |
| | Total $582,146.00 |

The jury's verdict awarded compensatory damages to each of the plaintiff groups in the full amounts they requested.

{¶4} In addition, pretrial stipulations, contingent upon a finding of liability, were submitted as to the amount of compensatory damages sustained by three groups of individual plaintiffs as follows:

| | |
|---|---|
| Mohammed Marwali/Selvey [sic] Pangkey . . . . . | $12,000.00 |
| Luciana Armanijigan [sic] . . . . . . . . . . . . . . . . . | $3,000.00 |
| Mitchell Rosenberg . . . . . . . . . . . . . . . . . . . . . . . | Nominal damages ($1) |
| | Total $15,001.00 |

Accordingly, the total compensatory damages awarded to the individual plaintiffs was $597,147.

---

[4]These compensatory damages figures are based on the trial court's statement, in its May 14, 2012 final judgment entry, of the compensatory damages awarded to the plaintiffs by the jury. In its answer to the jury interrogatory specifying the amount of compensatory damages to be awarded to each individual plaintiff group, the jury actually identified $35,200.00 as the amount of compensatory damages to be awarded to Marathe, not $35,020.00 as the trial court stated, and ultimately awarded to Marathe, in its judgment entry. Thus, the total compensatory damages the jury awarded the individual plaintiff groups (not including the stipulated damages) actually totaled $582,236. As no issue was raised by the parties regarding this error, we will ignore it in this appeal.

**{¶5}** Pretrial stipulations, contingent upon a finding of liability, were also submitted as to the compensatory damages sustained by the four insurer plaintiffs as follows:

| | |
|---|---|
| State Farm Insurance | $95,500.00 |
| Nationwide Insurance | $41,026.00 |
| Allstate Insurance | $25,104.95 |
| Safeco Insurance | $10,000.00 |
| | Total  $171,630.95 |

Accordingly, the total compensatory damages awarded to all plaintiffs was $768,777.95.

**{¶6}** The trial court then submitted the issue of punitive damages to the jury. In contrast to the particularized claims the individual plaintiff groups submitted as to their compensatory damages, the individual plaintiffs requested punitive damages collectively. In the verdict forms submitted to the jury, the trial court asked the jury to consider whether the individual plaintiffs as a group were entitled to an award of punitive damages and, if so, in what amount.

**{¶7}** The jury awarded punitive damages to the individual plaintiffs against Village Green in a lump sum of $2,000,000.[5] The jury also found that the individual plaintiffs were entitled to recover their reasonable attorney fees from Village Green.

---

[5]The jury was not asked to determine the amount of punitive damages to be awarded to each individual plaintiff or individual plaintiff group. Rather, with respect to the amount of punitive damages to be awarded, the jury was asked, "If you answered yes on either Verdict Form 'A' or 'B,' please state the amount of punitive damages to be awarded." The jury's response was $2,000,000.00. "Verdict Form A" addressed the liability of Village Green for punitive damages; "Verdict Form B" addressed the liability of FCRM for punitive damages. The jury found that FCRM was not liable for punitive damages.

Village Green filed various post-trial motions, including a motion to reduce the punitive damages award pursuant to R.C. 2315.21(D)(2)(a).  The trial court denied that motion.

{¶8} On May 14, 2012, the trial court issued a final judgment entry setting forth the separate compensatory damages awards to each of the individual plaintiff groups and insurer plaintiffs — totaling $768,777.95 in compensatory damages — and collectively awarding the ten individual plaintiff groups $2,000,000 in punitive damages, $1,040,000 in attorney fees and $51,757.15 in litigation costs against Village Green.  On January 17, 2013, this court affirmed the trial court's judgment. *Sivit v. Village Green of Beachwood*, 8th Dist. Cuyahoga No. 98401, 2013-Ohio-103.

{¶9} The Gruhins thereafter began to question how the punitive damages award would be allocated among the plaintiffs.  In a series of emails sent to counsel on January 23, 2013, David Gruhin inquired:

> Can you please explain your intentions as to the distribution of the punitive damages award?
>
> Are you distributing the punitive award based on a pro-rata share of the compensatory awards?  If not how do you plan on dividing the award as there is no language in our engagement letter indicating how this would be done.  There may be some expressed intent in the Jury Interrogatories or the Verdict Forms, that I am unaware of, and would like you to send me PDF copies of both of those documents for my review.
>
> Additionally, is the award to be divided by the 13 listed plaintiffs or by the 10 listed parties receiving compensatory awards in the final judgment?  If you are intending on dividing the punitive award by the 13 plaintiffs, I see that both Jason and Renee are listed as individual plaintiffs, would they each be entitled to a portion of the award, or would they receive one award as a single entity?  If they were to be given 2 shares of the punitive award, why was Sydney never made a plaintiff?  She was a co-signer on our original lease, yet she was never added to the class.  Also I noticed on the

final judgement that both Sydney and I are listed to receive an award. How would that be possible if she was not a plaintiff?

He further stated, "If the money is to be divided equally I have an issue with this, and I would guess both Carlos [Sivit] and Sonya [Pace] would as well. I can only assume the punitive damage award would not have been as high without our 3 compensatory awards. As such it would seem fairly unreasonable to divide the money equally when the remainder of the plaintiff's loss was significantly less than the 3 of ours." On January 24, 2013, counsel responded, in relevant part, as follows:

> [W]e anticipate dividing the punitives into 10 plaintiff groups equally.... they are NOT compensatory damages, and not linked to the compensatory damages....they are meant to punish the defendants, so regardless of the individual losses as tabulated, the purpose for the punitive award was equally shared. [I] believe the court's judgement entry will help clarify this for you....but, as [I] said, once you review them [sic] we will chat again. [I] believe everyone had other family members, and were not all listed in the lawsuit for their own individual reasons. * * *

David Gruhin claimed that he never received this response, but, in any event, he did not raise any further issue with respect to the allocation of the punitive damages award until April 2015 — more than two years later.

{¶10} In June 2013, the Ohio Supreme Court accepted Village Green's discretionary appeal on several issues, including whether the individual plaintiffs' claims constituted a "tort action" within the meaning R.C. 2315.21(A) to which the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a) applied. *Sivit v. Village Green of Beachwood*, 136 Ohio St.3d 1404, 2013-Ohio-2645, 989 N.E.2d 1019. Specifically, as it related to the amount of punitive damages awarded to the individual plaintiffs, the Ohio Supreme Court agreed to review the issue of whether

[a]n action to recover damages for injury to person or property caused by negligence or other tortious conduct is a 'tort action' within the meaning of R.C. 2315.21(A) even though the plaintiff's claim may have arisen from a breach of duty created by a contractual relationship and even though the defendant's conduct may have constituted both tortious conduct and a breach of contract.

*Sivit v. Village Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, ¶ 4.

{¶11} On appeal, the Ohio Supreme Court affirmed all of the issues related to the verdict except the award of punitive damages. *Id.* at ¶ 12. With respect to the award of punitive damages, the court agreed with Village Green that the action brought by the plaintiffs was indeed a "tort action" and that the $2,000,000 punitive damages award exceeded the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a). As the court explained in its opinion:

> We conclude that this is a tort action and, therefore, that it is subject to R.C. 2315.21.
>
> R.C. 2315.21(D)(2)(a) states that "in a tort action," a "court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff." The compensatory-damages award by the jury totaled $582,146. The judgment entry of the trial court also included stipulated compensatory damages of $186,631.95, which were contingent on a finding of liability. The punitive damages awarded totaled $2,000,000. The $2,000,000 award for punitive damages is more than twice the total compensatory damages. Accordingly, it is clear that the award of punitive damages is contrary to the mandate of R.C. 2315.21(D)(2). * * *
>
> Remittitur of punitive damages is required. * * * [T]he punitive damages * * * are in excess of the statutory limit. * * * We order reduction of the amount of punitive damages to twice the amount of compensatory damages

that were awarded in the trial court's judgment entry, which we deem an appropriate amount to deter the conduct at issue in this case.

*Id.* at ¶ 5-6, 8.

{¶12} In the conclusion of its opinion, the court further stated:

> In summary, we affirm the court of appeals with respect to all issues related to the verdict except the award of punitive damages. We agree with Village Green that the amount of punitive damages allowed exceeds the limit prescribed by R.C. 2315.21(D)(2)(a). Therefore, we hold that punitive damages in the amount of two times the award of compensatory damages is the appropriate amount and remand to the trial court to set the amount of damages.

*Id.* at ¶ 12.

{¶13} The opinion was accompanied by a judgment entry, dated April 2, 2015, which provided as follows:

> This cause, here on appeal from the Court of Appeals for Cuyahoga County, was considered in the manner prescribed by law. On consideration thereof, the judgment of the court of appeals is affirmed with respect to all issues related to the verdict except the award of punitive damages, consistent with the opinion rendered herein.
>
> It is further ordered that the court holds that punitive damages in the amount of two times the award of compensatory damages is the appropriate amount, and this issue is remanded to the trial court to set the amount of damages.
>
> It is further ordered that mandates be sent to and filed with the clerks of the Court of Appeals for Cuyahoga County and the Court of Common Pleas for Cuyahoga County.

{¶14} Village Green filed a motion for reconsideration on the issue of the individual plaintiffs' entitlement to punitive damages, which the Ohio Supreme Court denied. *Sivit v. Village Green of Beachwood, L.P.*, 142 Ohio St.3d 1479,

2015-Ohio-2104, 31 N.E.3d 656. On June 3, 2015, the Ohio Supreme Court issued its mandate and sent certified copies of its April 2, 2015 judgment entry to the trial court and this court.

{¶15} After the punitive damages award was reversed, counsel sent a letter to the Gruhins advising them of the Ohio Supreme Court's decision and stating that, "[b]ased on preliminary calculations," the Gruhins' punitive damages award was estimated "to be adjusted from $200,000 to approximately $153,750, not inclusive of interest earned" as a result of the decision. After receiving the letter, David Gruhin once again sent emails to counsel inquiring as to how the punitive damage award "is being divided up" and indicating that he assumed that he and Sydney would receive a 2/13ths share of the reduced punitive damages award. Counsel responded as follows:

> The final judgment entry split the punitive damage award 10 ways, in the same manner we presented damages to the jury. It was done by unit. * * * If it is your intent to challenge the divide, you will need to hire separate legal counsel as any such disputes amongst the clients would present a conflict of interest for us.

{¶16} Counsel and the Gruhins continued to exchange correspondence related to the allocation issue. On May 6, 2015, counsel sent a letter to the Sivit plaintiffs advising them of a potential dispute with the Gruhins relating to the allocation of the punitive damages award. In June 2015, the Gruhins retained separate counsel, and the Sivit plaintiffs continued to be represented by their original counsel.

**{¶17}** After the case was remanded, Village Green filed a motion for application of the Ohio Supreme Court's ruling capping punitive damages. Village Green argued that, based on the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a), the punitive damages award should be reduced to $1,194,294, i.e., two times the total compensatory damages awarded to the individual plaintiffs who sought punitive damages. The Sivit plaintiffs filed a response in which they argued that, pursuant to the mandate from the Ohio Supreme Court, the trial court was required to consider all of the compensatory damages, including the stipulated damages awarded to the insurance plaintiffs, in calculating the cap on punitive damages. They argued that this would result in a reduction of the punitive damages awarded to the individual plaintiffs from $2,000,000 to $1,537,555.90.

**{¶18}** The Gruhins joined in Village Green's motion to the extent it sought to apply R.C. 2315.21(D)(2)(a) on an individual basis to the claims of each individual plaintiff and joined in the response filed by the Sivit plaintiffs to the extent they asserted that the punitive damages award should be capped at $1,537,555.90 rather than $1,194,294. With respect to allocation and distribution of the $1,537,555.90, the Gruhins denied that they had agreed to share the punitive damages award equally with the other individual plaintiff groups and submitted affidavits to that effect. They argued that, consistent with R.C. 2315.21(D)(2)(a), $1,194,294 of the $1,537,555.90 should be allocated and distributed among the 13 individual plaintiffs in amounts equal to two times their share of the $597,147 in compensatory damages the trial court had awarded to the individual plaintiffs and that the remaining $343,261.90 in punitive damages should be

allocated and distributed either (1) to the 13 individual plaintiffs on a pro rata basis, based on their compensatory damages awards, or (2) to one or more nonprofit public institutions.

{¶19} The Sivit plaintiffs maintained that the individual plaintiffs had agreed that each of the ten individual plaintiff groups would receive an equal share of any punitive damages award regardless of the amount of compensatory damages awarded to that plaintiff group, i.e., $153,755.59 or 10% of the $1,537,555.90 that they claimed was the proper calculation of the punitive damages award. In support of their argument, the Sivit plaintiffs submitted affidavits from Sonya Pace and Carlos Sivit in which they attested, in relevant part: "With regard to the request for punitive damages, as advised by my attorneys, I was aware that the punitive damages would be shared equally amongst the 10 groups of plaintiffs represented by my attorneys." They further attested that although they were aware of the Gruhins' position on the allocation of punitive damages and that such position — were it to be accepted — would result in a larger punitive damages award to them, they were "not in agreement with the Gruhins' stated position and do not join in their motion to change the equal allocation of punitive damages."

{¶20} Following a hearing on the reduction of the punitive damages award, the trial court entered an order reducing the jury's $2,000,000 punitive damages award to $1,537,555.90, plus statutory interest from the date of the trial court's original judgment entry. In its July 10, 2015 order, the trial court explained the reasoning behind its decision as follows:

It is a rock bed principle of our system of jurisprudence that trial courts are subordinate to superior courts. In this instance, this Court has been ordered to re-access [sic] punitive damages at twice the compensatory damages in the original journal entry — an award which has been affirmed by the entire Eighth District Court of Appeals and a unanimous Supreme Court. The defendant now presents an elaborate and somewhat engaging argument to this Court to reduce the amount of compensatory damages subject to the statutory multiplier. This Court is not at liberty to do so. A trial court must obey the mandates of superior courts. If the defendant perceived any ambiguity in the mandate, the time and place to raise the current theory was at the Supreme Court in the motion for reconsideration, not here and not now.

Pursuant to the mandate of the Supreme Court of Ohio, punitive damages are reduced from $2,000,000.00 to $1,537,555.90 plus statutory interest from May 14, 2012 to date of payment.

{¶21} On July 13, 2015, the trial court ordered Village Green to pay the $1,537,555.90 in punitive damages plus statutory interest to the Cuyahoga County Clerk of Courts. The trial court thereafter entered a stipulated amended judgment entry pursuant to which the parties agreed that Village Green would deposit $1,194,294.00, the portion of the trial court's $1,537,555.90 punitive damages award it allegedly did not dispute, with the Cuyahoga County Clerk of Courts and a stay of execution would be granted as to the remaining $343,261.90 with interest pending appeal upon Village Green's posting of a $400,000 supersedeas bond.

{¶22} The trial court then addressed the dispute between the Gruhins and the Sivit plaintiffs related to the allocation of the punitive damages award. Following additional briefing and a hearing in which the trial court heard argument from both sides on the

allocation issue,[6] on August 31, 2015, the trial court issued an order and opinion in which it found that "a distribution of punitive damages does not have to be pro rata," that "plaintiffs may participate in determining the mode of distribution" and that "the agreement of the [p]laintiffs was to equally share any award of punitive damages." The trial court further found that an equal distribution of the punitive damages award "is fair, reasonable and equitable." The trial court, therefore, awarded $153,755.59 in punitive damages to each of the ten individual plaintiff groups.

{¶23} Village Green appealed the trial court's July 10, 2015, July 13, 2015 and August 31, 2015 orders, raising the following two assignments of error for review:

> Assignment of Error No. 1:
> The Common Pleas Court erred in awarding punitive damages in the amount of $153,755 to seven of the individual plaintiff groups.
>
> Assignment of Error No. 2:
> The Common Pleas Court erred in issuing preliminary orders reducing plaintiffs' total punitive damages from $2,000,000 to $1,537,555 and ordering defendant to pay that latter amount into court.

The Gruhins appealed the trial court's August 31, 2015 order, raising the following three assignments of error for review:

> First Assignment of Error:
> The lower court abused its discretion in finding in its August 31, 2015 Order and Opinion (the "August 31st Order") * * * that Plaintiffs had "banded together" and entered into an "agreement" amongst themselves, allocating and distributing the $1,537,555.90 punitive damages award in equal shares to ten "groups" of them — one share to Plaintiffs-Appellants (consisting of two individuals), and nine shares to Plaintiffs-Appellees (consisting of eleven individuals).

---

[6]It does not appear from the record that any request was made for an evidentiary hearing on the allocation issue.

Second Assignment of Error:
The lower court erred when, in contravention of the punitive damages "cap" set forth in O.R.C. §2315.21 * * *, it failed in the August 31st Order * * * to find each Plaintiff entitled to punitive damages equal to "two times" his or her individual compensatory damages awarded by the jury and, instead, allocated and distributed the punitive damages to Plaintiffs in excess of "two times" their respective compensatory damages award.

Third Assignment of Error:
The lower court's misplaced acceptance of and reliance upon material unsworn and unsubstantiated "facts" proffered by Plaintiffs-Appellees' counsel during the remand proceedings *in lieu* of any testimony or other evidentiary proofs from Plaintiffs-Appellees themselves, resulted in the inclusion of myriad false findings in the August 31st Order * * *, requiring its reversal, along with a clarification of the punitive damages award provision contained in the May 14, 2012 Final Judgment Entry * * * , and further modification of the October 19, 2015 Judgment Entry.

**Law and Analysis**

**Application of the Cap on Punitive Damages Set Forth in R.C. 2315.21(D)(2)(a)**

{¶24} Village Green's assignments of error and the Gruhins' second assignment of error are interrelated; we, therefore, address them together. All three assignments of error involve the interpretation and application of the statutory cap on punitive damages set forth in R.C. 2315.21(D)(2)(a) and the mandate of the Ohio Supreme Court following Village Green's appeal of the judgment entered on the jury verdict in this case. Village Green argues that under R.C. 2315.21(D)(2)(a), the trial court erred in awarding the individual plaintiffs more than $1,194,294.00 — two times the total compensatory damages awarded the individual plaintiffs — in punitive damages. The Gruhins similarly argue that under R.C. 2315.21(D)(2)(a), the punitive damages "allocable and distributable to each of [the individual plaintiffs] must * * * not exceed a maximum of

two times their respective individual, distinct, separate and unique compensatory damages awards." The Sivit plaintiffs assert that, consistent with R.C. 2315.21(D)(2)(a) and the mandate of the Ohio Supreme Court, the trial court properly considered the total amount of compensatory damages awarded all plaintiffs in the case, including the compensatory damages awarded the insurer plaintiffs, in reducing the jury's punitive damages award from $2,000,000 to $1,537,555.90. Following a careful review of the record and the applicable authority, we agree with Village Green and the Gruhins that the trial court's punitive damages award of $1,537,555.90 exceeds the limit prescribed by R.C. 2315.21(D)(2)(a) and is contrary to the mandate previously issued in this case by the Ohio Supreme Court.

**{¶25}** "Reviewing courts 'will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion.'" *Sivit*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, at ¶ 9, quoting *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 665 N.E.2d 664 (1996). A trial court abuses its discretion where it acts unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶26}** R.C. 2315.21(D)(2)(a) provides: "The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section." R.C. 2315.21(B)(2) provides:

> In a tort action that is tried to a jury and in which a plaintiff makes a claim
> for both compensatory damages and punitive or exemplary damages, the
> court shall instruct the jury to return, and the jury shall return, a general

verdict and, if that verdict is in favor of the plaintiff, answers to an interrogatory that specifies the total compensatory damages recoverable by the plaintiff from each defendant.

R.C. 2315.21(B)(3) applies to bench trials and, therefore, is not applicable here.

**{¶27}** R.C. 2315.21(C) further provides:

Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

(1)   The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

(2)   The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.

**{¶28}**   "The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 17, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11.   We examine the plain language of the statute, "read words and phrases in context[,] and construe them according to the rules of grammar and common usage."   *In re M.W.* at  ¶ 17, citing R.C. 1.42.   In doing so, we attempt to give effect to "every word, phrase, sentence, and part of the statute" and to avoid an interpretation that would "restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording" or that would otherwise render a provision meaningless or superfluous.  *State ex rel. Carna v. Texas Valley Local School Dist. Bd. of Edn.,* 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18-19.   Where, as here, a statute is clear on its face,

we must apply the statute as written. The General Assembly is presumed to mean what it said. *San Allen v. Buehrer*, 2014-Ohio-2071, 11 N.E.3d 739, ¶ 81 (8th Dist.).

{¶29} Applying these principles of statutory construction, we conclude that under R.C. 2315.21(D)(2)(a), the trial court was precluded from entering a judgment for punitive damages to the individual plaintiffs that exceeded two times the compensatory damages awarded to those plaintiffs. In other words, in computing the cap on punitive damages, the trial court could only consider the total compensatory damages awarded to the individual plaintiffs; it could not also consider the amount of compensatory damages awarded to other plaintiffs, i.e., the insurer plaintiffs, who were not seeking punitive damages, who were not involved in the punitive damages proceeding, and as to whom no determination of entitlement to punitive damages was made by the jury.

{¶30} Under R.C. 2315.21(D)(2)(a), the cap on punitive damages is computed by multiplying "the amount of the compensatory damages awarded to *the plaintiff*" times two. (Emphasis added.) The definite "the plaintiff" referenced in R.C. 2315.21(D)(2)(a) refers back, by its terms, to (1) the "plaintiff" identified in R.C. 2315.21(B)(2) (jury trials) or (3) (bench trials), as applicable, i.e., "*a plaintiff* [who] makes a claim for both compensatory damages and punitive or exemplary damages," and (2) the "determin[ation]" made in accordance with that provision, i.e., the jury's "answers to an interrogatory that specifies the total compensatory damages recoverable by *the plaintiff* from each defendant." (Emphasis added.) *See also* R.C. 2315.21(C)(2) ("punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless * * * [t]he trier of fact has returned a verdict or has made a

determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by *the plaintiff* from that defendant.") (Emphasis added.).

{¶31} The Sivit plaintiffs argue that their interpretation is simply a matter of reading the singular "the plaintiff" in R.C. 2315.21(D)(2)(a) as the plural "the plaintiffs"; however, it is much more than that. Although it is an accepted principle of statutory construction that "(t)he singular includes the plural, and the plural includes the singular," R.C. 1.43(A), this rule does not apply where there is "clear language in [the statute] to the contrary, or evidence which adequately demonstrates that such a construction is out of context with the remaining language of that statute or its related provisions." *Wingate v. Hordge*, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979).

{¶32} Furthermore, under the Sivit plaintiffs' interpretation of R.C. 2315.21(D)(2)(a), we would have to read "the plaintiff" not only as "the plaintiffs" but to include persons other than "plaintiff[s] [who] make[] a claim for both compensatory damages and punitive or exemplary damages" as set forth in R.C. 2315.21(B)(2) and (3) — to which R.C. 2315.21(D)(2)(a) expressly refers. Under the Sivit plaintiffs' interpretation, we would have to ignore the reference to R.C. 2315.21(B)(2) and (3) and read "the plaintiff" as encompassing all plaintiffs in the case who are awarded compensatory damages, regardless of whether they have made a claim for punitive damages. Such an interpretation is contrary to the plain meaning of the statute. Although "the plaintiff" as used in R.C. 2315.21(D)(2)(a), when read in context, could be reasonably interpreted as including all *plaintiffs* who "make[ ] a claim for both compensatory damages and punitive or exemplary damages" as set forth in R.C.

2315.21(B)(2) and (3), there is nothing in R.C. 2315.21 that permits "the plaintiff" as used in R.C. 2315.21(D)(2)(a) to be interchangeable with "a plaintiff [who] makes a claim for both compensatory damages and punitive or exemplary damages" and any other plaintiff in the case who receives a compensatory damages award — as the Sivit plaintiffs argue here.

{¶33} Further, when reading R.C. 2315.21(D)(2)(a) in context with the other provisions of the statute, it is worth noting that it is only where a plaintiff makes a claim for both compensatory damages and punitive or exemplary damages, that R.C. 2315.21 requires the jury, if a verdict is returned for the plaintiff, to answer an interrogatory that specifies the total compensatory damages recoverable by the plaintiff from each defendant. There is no such requirement in R.C. 2315.21 with respect to a plaintiff who does not make a claim for punitive damages. The reason for this distinction is that where a plaintiff makes a claim for both compensatory and punitive damages, there must be a basis upon which the court can calculate the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a); where there is no claim for punitive damages, no such calculation is required.

{¶34} Thus, any compensatory damages awarded to plaintiffs who have not asserted claims for punitive damages are not properly considered in applying the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a). *See also Freudeman v. Landing of Canton,* 702 F.3d 318, 331-334 (6th Cir.2012) (compensatory damages awarded for wrongful death claim could not be considered when determining the statutory cap on punitive damages awarded for survival claims under R.C. 2315.21(D)(2)(a) because

punitive damages are not available for a wrongful death claim and R.C. 2315.21(D)(2)(a) instructs the trial court to look at "the amount of the compensatory damages awarded to the *plaintiff*"; whereas the "real plaintiff" for a survival claim is the decedent's estate, the decedent's statutory beneficiaries are the "real parties" for a wrongful death claim).

{¶35}    The Sivit plaintiffs claim that such an interpretation of R.C. 2315.21(D)(2)(a) is contrary to the purpose for which punitive damages are awarded. However, it is not only the purpose of awarding punitive damages, but also the purpose of having a *cap* on punitive damages that is relevant here.  While the purpose of punitive damages is "to punish and deter certain conduct," *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994), the purpose of the cap on punitive damages — to which R.C. 2315.21(D)(2)(a) is directed — is to limit the amount of punitive damages that can be awarded against a defendant to "mak[e] the civil justice system more predictable." *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 102.

{¶36} Furthermore, the only reason an issue exists in this case as to whether the punitive damages cap should be based on the compensatory damages awarded to the individual plaintiffs or the total compensatory damages awarded to all plaintiffs (including the insurer plaintiffs who did not assert claims for punitive damages), is because the action filed by the individual plaintiffs was consolidated, for purposes of judicial economy, with the actions filed by the insurer plaintiffs who did not assert claims for punitive damages.  If the insurer plaintiffs' actions had not been consolidated with the action filed by the individual plaintiffs, there is no basis upon which the individual

plaintiffs could claim that they were entitled, under R.C. 2315.21(D)(2)(a), to punitive damages in excess of two times their own awards of compensatory damages. Given the purpose of the cap on punitive damages, we do not believe the legislature intended that the amount of punitive damages a trial court may award a plaintiff under R.C. 2315.21(D)(2)(a) should vary depending upon the number of other plaintiffs (or the amount of compensatory damages awarded to other plaintiffs) whose claims are tried with the plaintiff's claims but who do not themselves seek punitive damages (or as to whom no determination is made that they are entitled to punitive damages).

{¶37} The Sivit plaintiffs also argue that even if R.C. 2315.21(D)(2)(a) would have otherwise required the trial court to consider only the compensatory damages awarded to the individual plaintiffs in calculating the cap on punitive damages, the trial court was constrained by, and bound to follow, the mandate of the Ohio Supreme Court and award $1,537,555.90, two times the total compensatory damages awarded all plaintiffs, in punitive damages.

{¶38} An inferior court generally has "no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984), syllabus. The Sivit plaintiffs assert that the Ohio Supreme Court's mandate is found in paragraph 8 of its opinion, which states as follows:

> We order reduction of the amount of punitive damages to twice the amount of compensatory damages that were awarded in the trial court's judgment entry, which we deem an appropriate amount to deter the conduct at issue in this case.

Village Green argues that this language should not be construed as mandating a reduction in the punitive damages award to $1,537,555, i.e., twice the compensatory damages awarded to all of the plaintiffs, because the court's opinion "did not mention — and certainly did not consider the significance of — the fact that $171,630.95 of the 'stipulated compensatory damages of $186,671.95' had been awarded to four subrogated insurance company plaintiffs who had not been awarded any punitive damages by the jury" given that that fact had no relevance to the issues then before the court.   (Emphasis omitted.)   Village Green also contends that paragraph 8 is inconsistent with paragraph 12 of the opinion that remands the matter to the trial court to "set the amount of damages." The Sivit plaintiffs respond that because the court pointed out in its opinion that the "compensatory-damages awarded by the jury totaled $582,146" and that "[t]he judgment entry of the trial court also included stipulated compensatory damages of $186,631.95, which were contingent on a finding of liability," the court clearly understood that "the amount of compensatory damages that were awarded in the trial court's judgment entry" included the compensatory damages awarded to the insurer plaintiffs who had not requested punitive damages.

{¶39} We need not resolve the issue of whether the Ohio Supreme Court, in rendering its decision, understood and considered the fact that the total compensatory damages awarded in this case included compensatory damages to plaintiffs who did not seek punitive damages or precisely what the Ohio Supreme Court intended by its reference to "the amount of compensatory damages that were awarded in the trial court's judgment entry" in paragraph 8 of its opinion because paragraph 8 is not the mandate of

the Ohio Supreme Court in this case. S.Ct.Prac.R. 18.04(C) provides: "A certified copy of the judgment entry shall constitute the mandate." In this case, the Ohio Supreme Court's mandate, i.e., a certified copy of its April 2, 2015 judgment entry, stated, in relevant part, as follows:

> This cause * * * is affirmed with respect to all issues related to the verdict except the award of punitive damages, consistent with the opinion rendered herein.
>
> It is further ordered that the court holds that punitive damages in the amount of two times the award of compensatory damages is the appropriate amount, and this issue is remanded to the trial court to set the amount of damages.

{¶40} Accordingly, the Ohio Supreme Court remanded the case for the trial court "to set the amount of damages." For the reasons explained above, properly "set[ting] the amount of [punitive] damages," in accordance with R.C. 2315.21(D)(2)(a), required the trial court to award a total of $1,194,294 in punitive damages, not $1,537,555.90 in punitive damages, as the trial court did here. We do not find that applying R.C. 2315.21(D)(2)(a) as written, i.e., limiting the punitive damages award to two times the total compensatory damages awarded to the individual plaintiffs, would violate the mandate of the Ohio Supreme Court.

{¶41} Although we agree with Village Green that the trial court erred in setting the amount of the punitive damages award at $1,537,555.90, rather than $1,194,294, we also agree with the Sivit plaintiffs that the punitive damages award must be reversed in total — not just, as Village Green suggests, as to the punitive damages allocated to the seven individual plaintiff groups — Jason and Renee Edwards, Natalie Rudd, Prathibha Marathe, Hallie Gelb, Mohammad Marwali and Selvy Pangkey, Luciana Armaganijan

and Mitchell Rosenberg —  who would receive more than two times their compensatory damages under the trial court's per capita allocation of the punitive damages award. Accordingly, we sustain Village Green's first assignment of error in part and the Gruhins' second assignment of error in part and overrule them in part.  We also sustain Village Green's second assignment of error.  We reverse the trial court's punitive damage award and remand the matter to the trial court to reset the total amount of punitive damages awarded to the individual plaintiffs at $1,194,294.

### The Trial Court's Allocation of the Punitive Damages Award

{¶42} In their first and third assignments of error, the Gruhins argue that they are entitled to punitive damages equal to twice their compensatory damages award — $222,466 in punitive damages — and that the trial court abused its discretion in allocating the punitive damages equally, on a per capita basis, among the ten individual plaintiff groups.

{¶43} The Gruhins do not dispute that the individual plaintiffs could have entered into an agreement specifying how any punitive damages award they received was to be allocated among them, and that, if such an agreement had been made, the trial court could have enforced that agreement and ordered the allocation and distribution of the punitive damages award consistent with that agreement.  The Gruhins assert, however, that no such agreement existed among the individual plaintiffs.  The Gruhins contend that the trial court's findings that the individual plaintiffs had "banded together" and agreed to equally share any punitive damages award among the ten individual plaintiff groups "are patently false and erroneous," that "no testimony or other evidentiary proofs supportive of

such findings exist," and that the trial court "inexplicably allowed itself to be swayed" by "unsworn, unsubstantiated, untrue, wholly gratuitous and self-serving statements improperly proffered as 'fact'" by the Diemert law firm.

{¶44} We disagree with the Gruhins that there was "no evidence" in the record to support the trial court's finding that the individual plaintiffs had agreed to equally share any award of punitive damages. In addition to the affidavits from Sivit and Pace setting forth their understanding that the punitive damages award would be shared equally among the ten individual plaintiff groups,[7] the verdict forms submitted to the jury on the issue of punitive damages reflect an intent or understanding on the part of the individual plaintiffs to share in any punitive damages award (particularly when compared with the interrogatory submitted on the issue of compensatory damages, which required the jury to specify the amount of compensatory damages awarded to each of the individual plaintiff groups). Furthermore, after counsel advised David Gruhin in January 2013 that, consistent with the trial court's judgment entry, he "anticipate[d] dividing the punitives into 10 plaintiff groups equally" because "the purpose for the punitive award was equally shared," the Gruhins did not raise any further issue with respect to proposed allocation of the punitive damages award until April 2015 — more than two years later — and, then, only after counsel sent a letter advising the Gruhins that their share of the punitive damages award would likely be reduced from $200,000 to $153,750 as a result of the

---

[7]Sivit and Pace would have each received a much larger share of the punitive damages award if the award had been allocated on a pro rata basis, based on the compensatory damages they were awarded, rather than a per capita basis, shared equally among the ten individual plaintiff groups.

decision by the Ohio Supreme Court. Although David Gruhin claims he never received counsel's January 24, 2013 email, it strains credulity to believe that he would have waited more than two years for a response to his January 2013 emails without following up, particularly given that, due to his "hectic" work schedule, he had requested "a written response detailing your intentions in regard to the punitive damages, sent within 7 days."

{¶45} Although the Gruhins dispute that an agreement existed among the plaintiffs to share any punitive damages award equally, they do not claim that there was some other agreement among the plaintiffs as to how the lump sum punitive damages award would be allocated. Nor do they indicate how they thought the award would be allocated when the jury was asked to award punitive damages to the plaintiffs collectively.[8]

{¶46} We need not decide the issue of whether sufficient evidence existed to support the trial court's finding that an agreement existed among the individual plaintiffs to equally share any award of punitive damages because even if the trial court erred in concluding that such an agreement existed, we would still affirm the trial court's decision to distribute the punitive damages award equally among the ten individual plaintiff groups based on the particular facts and circumstances in this case.

{¶47} The Gruhins argue that R.C. 2315.21(D)(2)(a) controls the allocation of the punitive damages award in this case and that the trial court's failure to allocate punitive damages to each of the plaintiff groups in an amount equal to two times their

---

[8]As discussed below, at that time, there had been no determination that plaintiffs' action was a "tort action" within the meaning of R.C. 2315.21. Accordingly, the Gruhins could not have then expected that R.C. 2315.21 applied to the plaintiffs' claims or that they would receive a pro rata share of the total punitive damages awarded, as they now claim, based on R.C. 2315.21(D)(1)(a).

compensatory damages violates R.C. 2315.21(D)(2)(a).  The Gruhins contend that R.C. 2315.21(D)(2)(a) requires the court to (1) "look to the 'groups' of Plaintiffs who made claims for both compensatory and punitive damages," (2) "take into account the varying amounts of compensatory damages awarded to each individual 'group' of Plaintiffs" and (3) multiply "each of these ten individual amounts * * * by two * * * to determine the amount of punitive damages to which each Plaintiff is entitled pursuant to the Statute." (Emphasis omitted.)  The Gruhins contend that because certain plaintiff groups will receive more than two times their awarded compensatory damages and other plaintiff groups will receive less than two times their awarded compensatory damages under the trial court's allocation of the punitive damages award, the trial court's allocation of punitive damages must be reversed.  Once again, we disagree.

{¶48}  The purpose of R.C. 2315.21(D)(2)(a) is to limit the damages awarded against a defendant, not to ensure that a particular plaintiff gets a particular punitive damage award (or a particular share of a punitive damages award).  Thus, R.C. 2315.21(D)(2)(a) does not, as the Gruhins contend, "entitle" a plaintiff to a particular *amount* of punitive damages.

{¶49}  Significantly, in this case, the jury was not asked to make (and, therefore, did not make) separate determinations, as to each individual plaintiff or plaintiff group (1) whether the plaintiff or plaintiff group was entitled to punitive damages from Village Green and (2) if so, in what amount.  There was no ruling that R.C. 2315.21 — and specifically, the cap on punitive damages set forth in R.C. 2315.21(D)(2)(a) — applied to the individual plaintiffs' claims for punitive damages prior to the jury's verdicts on

punitive damages. Thus, for strategic reasons, no doubt with an eye toward (1) convincing the jury to award punitive damages to the plaintiffs in the first instance and (2) maximizing any punitive damages award ultimately awarded by the jury, the individual plaintiffs' claims for punitive damages were presented collectively to the jury and the jury was asked to consider an award of punitive damages to the plaintiffs as a group.

{¶50} Consistent with that approach, two verdict forms were submitted to the jury in the punitive damages phase of the trial. The jury was asked to consider (1) whether the individual plaintiffs as a group should be awarded punitive damages against Village Green and (2) if so, in what amount. No objection was raised to the trial court's submission of these verdict forms to the jury. Likewise, no objection was made after the jury awarded punitive damages to the individual plaintiffs in a lump sum. Nor was any claim made on appeal that the trial court erred in failing to submit jury interrogatories asking the jury to independently consider the punitive damages claim of each individual plaintiff or in permitting the jury to make a lump sum punitive damages award. The only objection that was made and the only error that was raised on appeal related to the verdict forms was Village Green's objection to the total amount of punitive damages awarded against it. Accordingly, any error allegedly associated with the trial court's failure to request separate determinations from the jury on the plaintiffs' punitive damages claims or the jury's lump sum punitive damages award has been waived and any claim based on any such alleged error would be barred by res judicata. *See also Faieta v. World Harvest Church*, 10th Dist. Franklin No. 08AP-527, 2008-Ohio-6959, ¶ 80-85 (trial court did not

commit plain error by submitting to the jury general verdict forms and interrogatories that did not require the jury to specify the amount of punitive damages awarded to each individual plaintiff where defendants, who on appeal claimed the submission of the verdict forms and interrogatories was plain error, not only failed to object to the verdict forms and interrogatories, but invited the alleged error by submitting draft verdict forms and interrogatories to the trial court that asked the jury to determine the amount of damages awarded to the plaintiffs collectively, not individually).

{¶51} Although we agree, reading the statute as a whole, that R.C. 2315.21 seems to contemplates that the trier of fact will make individualized determinations of both the compensatory damages to be awarded to a particular plaintiff (or a plaintiff group where, as here, the claims of individual plaintiffs such as a husband and wife are presented together) and whether a particular plaintiff is entitled to recover punitive damages, there is nothing in R.C. 2315.21 that expressly requires the trial court, in a multi-plaintiff case, to submit an interrogatory to the jury that specifies the amount of punitive damages recoverable by each plaintiff from a defendant.  *Compare* R.C. 2315.21(B)(2) ("In a tort action that is tried to a jury and in which a plaintiff makes a claim for both compensatory damages and punitive or exemplary damages, the court shall instruct the jury to return, and the jury shall return, a general verdict and, if that verdict is in favor of the plaintiff, answers to an interrogatory that specifies the total compensatory damages recoverable by the plaintiff from each defendant.") *with* R.C. 2315.21(B)(1)(b) ("If the jury determines in the initial stage of the trial that the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant, evidence may be presented

in the second stage of the trial, and a determination by that jury shall be made, with respect to whether the plaintiff additionally is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.") *and* R.C. 2315.21(D)(1)("In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages."). Further, R.C. 2315.21 does not address the allocation of a lump sum punitive damages award where, as here, the trier of fact was not asked to make an individualized determination of the amount of punitive damages to be awarded to each plaintiff determined to be entitled to recover punitive damages.

{¶52} Given that the jury was not asked to make separate determinations of the amount of punitive damages each individual plaintiff was entitled to recover, the allocation of the punitive damages the jury awarded to the individual plaintiffs as a group was properly left to the discretion of the trial court.

{¶53}　　As the Ohio Supreme Court explained in *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, courts have "a central role to play" in determining how punitive damage awards should be distributed:

> [A] punitive damages award is about the defendant's actions. "The purpose of punitive damages is not to compensate a plaintiff but to punish the guilty, deter future misconduct, and to demonstrate society's disapproval." * * * At the punitive-damages level, it is the societal element that is most important. The plaintiff remains a party, but the de facto party is our society, and the jury is determining whether and to what extent we as a society should punish the defendant.
>
> There is a philosophical void between the reasons we award punitive damages and how the damages are distributed. The community makes the statement, while the plaintiff reaps the monetary award. * * * In Ohio,

punitive damages are an outgrowth of the common law. * * * Therefore, Ohio's courts have a central role to play in the distribution of punitive damages. Punitive damages awards should not be subject to bright-line division but instead should be considered on a case-by-case basis, with those awards making the most significant societal statements being the most likely candidates for alternative distribution.

Clearly, we do not want to dissuade plaintiffs from moving forward with important societal undertakings. The distribution of the jury's award must recognize the effort the plaintiff undertook in bringing about the award and the important role a plaintiff plays in bringing about necessary changes that society agrees need be made. Plaintiffs themselves might get involved in how the award is distributed. * * *

*Id.* at ¶ 187-189.

{¶54} The Gruhins claim that the trial court's allocation of the punitive damages award in ten equal shares is a case of "robbing Peter to pay Paul" and that the Gruhins are entitled to have the punitive damages award "allocated and distributed in line with their respective, distinct, separate and unique individually awarded compensatory damages" just as would have occurred "[h]ad each [p]laintiff filed a separate action." The Gruhins' argument assumes that if they had brought their claims separately from those of the other plaintiffs (1) the jury would have still awarded them punitive damages and (2) the punitive damages the jury awarded them would not have been less than the statutory cap of two times their compensatory damages. There is, however, no guarantee that that would have been the case.

{¶55} While the Gruhins are correct that they and each of the other individual plaintiffs could have filed separate actions asserting their claims for compensatory and punitive damages on a "wholly separate and independent basis," it is not necessarily true if they had done so, that they would have received the punitive damages award to which

they now claim they are entitled. Two times compensatory damages was simply the maximum amount the Gruhins could have recovered in punitive damages had their claims been tried separately. Had the Gruhins' claims been tried separately (or if separate interrogatories had been submitted to the jury on their punitive damages claim), they could have received the same punitive damages award, a lower punitive damages award or even no punitive damages at all. As the Ohio Supreme Court recently stated in *Whetstone v. Binner*, Slip Opinion. No. 2016-Ohio-1006, ¶ 20, "[A]n award of punitive damages is not automatic. Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact."

{¶56} No doubt the reason the individual plaintiffs joined their claims together in a single lawsuit and submitted their punitive damages claims to the jury collectively was because they saw potential advantages to doing so, including an increased likelihood of receiving a substantial punitive damages award. The fact that ten plaintiff groups (some of whom were elderly, some of whom had children) all suffered significant losses as a result of the defendant's malicious conduct may have very well increased the punitive damages award to the individual plaintiffs beyond what they would have received had their claims been tried independently. Likewise, the fact certain plaintiffs, such as Rosenberg and Armaganijan, were clearly harmed by Village Green's conduct but Village Green was required to pay only "nominal" "agreed upon" compensatory damages for their losses may have led the jury to increase the amount of punitive damages awarded to the individual plaintiffs as a group.

**{¶57}** Based on our review of the record, we cannot say that the trial court acted arbitrarily, unreasonably or unconscionably in ordering the lump sum punitive damages award to be shared equally among the ten individual plaintiff groups. In determining what a "fair, reasonable and equitable" allocation of the punitive damages should be, the trial court considered the relevant facts and equities of the situation, including the verdict forms and interrogatories submitted to the jury, the manner in which the plaintiffs' claims were presented at trial, i.e., as ten plaintiff groups representing the ten apartment units the individual plaintiffs occupied at the time of the fire, the role and purpose of the stipulations that had been entered as to the compensatory damages sustained by certain of the individual plaintiffs and the nature of the claims asserted.

**{¶58}** As the trial court observed, every plaintiff was a victim of the same malicious conduct that justified the award of punitive damages against Village Green. Some of the plaintiffs, such as Rosenberg, were subject to such conduct for a much longer period of time than the Gruhins. Every plaintiff lost items that were of great personal value for which the law may not have provided adequate compensation. Every plaintiff was displaced from his or her home due to the damage caused by the fire. To the extent that some individual plaintiff groups suffered higher compensable losses than others, those differences were already accounted for in the compensatory damages awards the plaintiff groups received and need not have been considered by the trial court in allocating the punitive damages award.

**{¶59}** Accordingly, we overrule the Gruhins' first and third assignments of error. We affirm the trial court's judgment in part, reverse the trial court's judgment in part, and

remand the matter for the trial court to enter an order setting the total amount of punitive damages awarded to the individual plaintiffs at $1,194,294, to be distributed equally among the ten individual plaintiff groups, i.e., $119,429.40 to each of the ten individual plaintiff groups.

**{¶60}** This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that the Gruhins and Village Green share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR