[Cite as *Rieger v. Giant Eagle, Inc.*, 2018-Ohio-1837.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105714

---

# BARBARA RIEGER

### PLAINTIFF-APPELLEE

vs.

# GIANT EAGLE, INC.

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; MODIFIED IN PART AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-821297

**BEFORE:** Kilbane, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** May 10, 2018

**ATTORNEYS FOR APPELLANT**

Roger H. Williams
Christina N. Williams
Williams, Moliterno & Scully Co., L.P.A.
2 Summit Park Drive - Suite 235
Cleveland, Ohio 44131

Scott D. Livingston
Marcus & Shapira, L.L.P.
One Oxford Centre
301 Grant Street - 35th Floor
Pittsburgh, Pennsylvania 15219-6401


**ATTORNEYS FOR APPELLEE**

John J. Wargo, Jr.
Thomas M. Wilson
Wargo and Wargo Co., L.P.A.
30 Park Drive
Berea, Ohio 44017

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Giant Eagle, Inc. ("Giant Eagle"), appeals from the trial court's order entering the jury verdict in favor of plaintiff-appellee, Barbara Rieger ("Rieger"), and awarding Rieger $121,000 in compensatory damages and $1,198,000 in punitive damages. For the reasons set forth below, we affirm the compensatory damages award and modify the $1,198,000 punitive damages award by remanding to the trial court to enter an order setting the total amount of punitive damages awarded to $242,000.

**{¶2}** This appeal arises from injuries Rieger sustained as a result of a December 2012 accident in a Giant Eagle store with Ruth Kurka ("Kurka"). Both Rieger and Kurka were shopping at Giant Eagle at the time. Rieger was standing in front of the bakery counter with her shopping cart when her shopping cart was hit by a Giant Eagle motorized cart driven by Kurka. This collision caused Rieger's shopping cart to hit Rieger who then was knocked to the ground.

**{¶3}** In February 2014, Rieger filed a negligence action against Giant Eagle and John Doe. Rieger amended her complaint in May 2014. In her amended complaint, she alleges causes of action for negligence and negligent entrustment against Giant Eagle. She also alleges a negligence cause of action against Kurka, who passed away during the litigation. In June 2015, a suggestion of death was filed, and the Kurka Estate settled with Rieger for $8,500. Rieger dismissed Kurka from the lawsuit in April 2016.

**{¶4}** The matter then proceeded to a jury trial against Giant Eagle. The following evidence was adduced at trial.

{¶5} On the date of the accident, Rieger and Kurka and her husband, George Kurka ("George"), went grocery shopping at Giant Eagle. George helped his wife into a motorized cart and then parked his car. When he arrived at the bakery section, he observed his wife on the motorized cart and Rieger on the floor. He asked Kurka what happened, but she said she did not know. Rieger testified that she was standing in front of the bakery counter with her shopping cart when she was knocked to the ground. She was hit by her shopping cart, which was hit by a Giant Eagle motorized cart driven by Kurka. Rieger was not able to stand after the accident, and was taken to the hospital by ambulance.

{¶6} According to George, Kurka had never been trained on how to operate the Giant Eagle motorized cart and Kurka had been diagnosed with dementia prior to the December 2012 accident. A Giant Eagle corporate representative testified that the safety warnings placed on Giant Eagle motorized carts were for the safety of the driver.

{¶7} Rieger presented evidence of 179 incidents involving motorized shopping carts at Giant Eagle stores. These incidents occurred between February 2004 and November 2015 (which was three years after Rieger's incident). Of the 179 incidents, 117 of them occurred prior to the December 2012 incident involving Rieger.

{¶8} At the close of Rieger's case, Giant Eagle moved for directed verdict on the issues of negligence, negligent entrustment, and punitive damages, which the trial court denied.

**{¶9}** After the conclusion of the trial, the jury awarded Rieger $121,000 in compensatory damages and $1,198,000 in punitive damages. Rieger then filed a combined brief in support of her proposed journal entry on the jury verdict and a brief in support of her motion to determine R.C. 2315.21 unconstitutional as applied. Rieger noted the parties stipulated that any compensatory judgment awarded to Rieger would be offset by the prior Kurka settlement of $8,500. As a result, Rieger was entitled to $112,500 in compensatory damages from Giant Eagle. Rieger further noted that under R.C. 2315.21, her punitive damages award was limited to two times the compensatory damages award, which is $242,000. However, Rieger argued that R.C. 2315.21 is unconstitutional as applied to her case and the punitive damages of $1,198,000, as awarded by the jury to Rieger, should not be reduced. The trial court conducted a hearing on the pending motions.

**{¶10}** Following the hearing, the trial court granted Rieger's motion to find R.C. 2315.21 unconstitutional as applied. The court found that "the [j]ury's punitive damage award of $1,198,000.00 is within a constitutionally acceptable range and is not excessive; and, is within the confines of the legislative purpose of punitive damages which is to deter and punish." The trial court then entered a judgment awarding Rieger $112,500 in compensatory damages and $1,198,000 in punitive damages.

**{¶11}** Giant Eagle now appeals, raising the following five assignments of error, which shall be discussed together where appropriate:

<u>Assignment of Error One</u>

The trial court erred by failing to grant [Giant Eagle's] motion for directed verdict on [Rieger's] claim for punitive damages.

### Assignment of Error Two

The trial court erred by finding that R.C. 2315.21, which limits punitive damages to twice the award for compensatory damages, was unconstitutional as applied in this case.

### Assignment of Error Three

The trial court erred by failing to grant Giant Eagle's motion for a directed verdict on [Rieger's] claim alleging that Giant Eagle negligently provided motorized shopping carts to its customers.

### Assignment of Error Four

The trial court erred by failing to grant Giant Eagle's motion for a directed verdict on [Rieger's] claim alleging that Giant Eagle negligently entrusted [Kurka], a customer, with one of its motorized carts.

### Assignment of Error Five

The trial court erred by admitting 179 incidents involving a motorized shopping cart at a Giant Eagle store between 2004 and 2015 without any showing of similarity or other indicia of relevancy between these incidents and the accident in this case.

### Directed Verdict

{¶12} In the first, third, and fourth assignments of error, Giant Eagle challenges the trial court's denial of its motion for directed verdict regarding Rieger's claims for punitive damages, negligence, and negligent entrustment.

{¶13} Civ.R. 50(A) governs motions for directed verdict and reads as follows:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

*Id.* at (A)(4).

{¶14} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788, ¶ 28 (8th Dist.), citing *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor. *Id.*, citing *Hargrove v. Tanner*, 66 Ohio App.3d 693, 695, 586 N.E.2d 141 (9th Dist.1990). It is the duty of the trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. *O'Day v. Webb*, 29 Ohio St.2d 215, 220, 280 N.E.2d 896 (1972).

{¶15} With regard to punitive damages, when a plaintiff fails to present sufficient evidence of malice on the part of a defendant, the court may properly direct a verdict in favor of that defendant on the issue of punitive damages. *McCullough v. Spitzer Motor Ctr.*, 108 Ohio App.3d 530, 536, 671 N.E.2d 306 (8th Dist.1995).

{¶16} Relevant to the instant case, "punitive * * * damages are not recoverable from a defendant * * * in a tort action unless * * * [t]he actions or omissions of that defendant demonstrate malice[.]" R.C. 2315.21(C)(1). The Ohio Supreme Court has defined malice as "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus. The "conscious disregard" concept "requires the party to possess knowledge of the harm that might be caused by his behavior." *Id.* at 335. Inherent in the award of punitive damages is that something more than mere negligence is required. *Id.*, citing *Leichtamer v. Am. Motors Corp.*, 67 Ohio St.2d 456, 472, 424 N.E.2d 568 (1981); *Detling v. Chockley*, 70 Ohio St.2d 134, 436 N.E.2d 208 (1982).

> This concept is reflected in the use of such terms as "outrageous," "flagrant," and "criminal." The concept requires a finding that the probability of harm occurring is great and that the harm will be substantial. A possibility or even probability is not enough as that requirement would place the act in the realm of negligence. A requirement of substantial harm would also better reflect the element of outrage required to find actual malice.

*Id.* at 335-336.

{¶17} Giant Eagle argues that permitting customers to use motorized shopping carts is not conduct that has a great probability of causing substantial harm. The issue in this case, however, is not whether Giant Eagle is obligated to provide motorized carts to disabled customers. Rather, it is Giant Eagle's obligation to protect its customers.

Giant Eagle had actual knowledge of a nine-year history of 117 prior motorized cart accidents.

{¶18} Rieger presented evidence that, even though Giant Eagle had the corporate knowledge of these accidents, the injuries sustained by its customers, and the mechanism in which its customers were injured, Giant Eagle did not train its customers on the use of its motorized carts, had no policy on training its customers on how to drive its motorized carts, and did not have any policy to determine the criteria required for a customer to operate a motorized cart.

{¶19} The purpose of punitive damages "'is not to compensate a plaintiff but to punish the guilty, deter future misconduct, and to demonstrate society's disapproval.'" *Sivit v. Village Green of Beachwood, L.P.*, 2016-Ohio-2940, 65 N.E.2d 163, ¶ 53 (8th Dist.), quoting *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, ¶ 187. "'At the punitive-damages level, it is the societal element that is most important. The plaintiff remains a party, but the de facto party is our society, and the jury is determining to what extent we, as a society, should punish the defendant." *Id.*

{¶20} Based on the foregoing, we cannot say that Rieger failed to present evidence from which reasonable minds could find in her favor.

{¶21} With regard to Rieger's negligence claim, Giant Eagle argues she failed to establish that it breached its duty of care owed to her and that such breach caused Rieger's injuries. Giant Eagle claims that any danger posed by the motorized shopping

carts was open and obvious and she failed to present evidence on causation. Even if it was required to provide additional safety instructions and training, Giant Eagle contends that these safety fixes would not have made a difference unless the accident occurred because Kurka either did not know how to drive the motorized cart or she suffered from some infirmity that prevented her from being able to drive safely.

{¶22} In order to prevail on her negligence claim, Rieger had to present evidence demonstrating the existence of a duty, a breach of that duty by Giant Eagle, and that Rieger's injuries were proximately caused by Giant Eagle's breach of duty to Rieger as a business invitee. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 247 N.E.2d 732 (1969); *Feldman v. Howard*, 10 Ohio St.2d 189, 226 N.E.2d 564 (1967).[1] The *Menifee* Court stated that

> [t]he existence of a duty depends on the foreseeability of the injury. *Ford Motor Co. _v. Tomlinson* (C.A. 6, 1956), 229 F. 2d 873 [59 O. O. 345]; *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335.
>
> The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Freeman v. United States* (C.A. 6, 1975), 509 F. 2d 626; *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116 [38 O.O.2d 294]; *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31 [41 O.O. 117]. The foreseeability of harm usually depends on the defendant's knowledge. *Thompson*, *supra*.

*Id.* at 77.

---

[1]A review of the record reflects the parties stipulated that Rieger was an invitee of Giant Eagle.

**{¶23}** We note that an occupier of premises for business purposes may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee, just as such occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises. *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 138, 237 N.E. 2d 127 (1969); Restatement of the Law, Torts 2d, Section 344. However, an occupier of premises for business is not liable when the occupier does not, and could not in the exercise of ordinary care, know of a danger that causes injury to its business invitee. *Id.*

**{¶24}** Here, Rieger demonstrated that prior to her incident in December 2012, Giant Eagle had knowledge concerning the injuries sustained by Giant Eagle customers from motorized carts driven by other Giant Eagle customers. This prior knowledge is reasonably sufficient to establish the duty owed by Giant Eagle to its customers. This evidence is sufficient evidence from which reasonable minds could find that Giant Eagle was negligent.

**{¶25}** With regard to negligent entrustment, Giant Eagle argues Rieger failed to establish that Kurka was "an incompetent motorized cart driver."

**{¶26}** A negligent entrustment claim arises when the owner of a motor vehicle knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent driver. *Gulla v. Straus*, 154 Ohio St. 193, 93 N.E.2d 662 (1950), paragraph three of the syllabus.

{¶27} In the instant case, Giant Eagle stipulated that it was the owner of the motorized cart and that Kurka operated the cart. George testified that his wife was diagnosed with dementia before December 2012. He further testified that she never received any training on how to drive the Giant Eagle motorized cart. Giant Eagle representatives testified that it does not provide any instructions or training to customers for the motorized carts. In light of the foregoing, Rieger presented sufficient evidence to permit reasonable minds to reach different conclusions on that issue.

{¶28} Upon consideration of the foregoing, we find that the trial court did not err by denying Giant Eagle's motion for a directed verdict. Rieger presented evidence from which reasonable minds could find in her favor.

{¶29} Thus, the first, third, and fourth assignments of error are overruled.

Punitive Damages Award

{¶30} In the second assignment of error, Giant Eagle argues the trial court erred by finding R.C. 2315.21 unconstitutional, as applied, and awarding Rieger $1,198,000, which is more than twice the statutory limit of the compensatory damages award. We agree.

{¶31} In *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, the Ohio Supreme Court left open "as applied" challenges to the constitutionality of R.C. 2315.21.

{¶32} R.C. 2315.21(D) provides in relevant part:

(1) In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages.

(2) Except as provided in division (D)(6) of this section, all of the following apply regarding any award of punitive or exemplary damages in a tort action:

(a) The court shall not enter judgment for punitive or exemplary damages *in excess of two times the amount of the compensatory damages awarded to the plaintiff* from that defendant, as determined pursuant to division (B)(2) or (3) of this section.

(Emphasis added.)

{¶33} The *Arbino* Court noted that "[a] party raising an as-applied constitutional challenge must prove by clear and convincing evidence that the statute is unconstitutional when applied to an existing set of facts. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 181." *Simpkins v. Grace Brethren Church of Delaware*, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 22.

{¶34} In the instant case, Rieger argued that R.C. 2315.21 is unconstitutional, as applied, and the punitive damages of $1,198,000, as awarded by the jury, should not be reduced. The trial court agreed, finding R.C. 2315.21 unconstitutional as applied. The court stated that "the [j]ury's punitive damage award of $1,198,000.00 is within a constitutionally acceptable range and is not excessive; and, is within the confines of the legislative purpose of punitive damages which is to deter and punish."

{¶35} We note that the limits on the punitive damages set forth in R.C. 2315.21(D)(2) were based on guidance provided by the United States Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155

L.Ed.2d 585 (2003). *See* Section 3(A)(4)(c) of the legislative history of R.C. 2315.21. In *State Farm*, the United States Supreme Court determined whether a $145,000,000 award of punitive damages was appropriate. In doing so, the Court referred to the three guideposts for punitive damages articulated in *BMW of N.Am. v. Gore*, 517 U.S. 599, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996):

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm* at 418, citing *Gore*. "According to the United States Supreme Court, 'few awards exceeding a single digit ratio between punitive damages and compensatory damages * * * will satisfy due process.'" Section 3(A)(4)(c) of Legislative history of R.C. 2315.21, quoting *State Farm* at 605-606.

{¶36} In *Barnes v. Univ. Hosps. of Cleveland*, 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, ¶ 40, the Ohio Supreme Court instructed lower courts to apply the *Gore* principles when reviewing punitive damage awards alleged to be unconstitutionally excessive. The *Barnes* Court stated:

> The first guidepost, the degree of reprehensibility of the defendant's conduct, is "the most important indicium of the reasonableness of a punitive damages award." *Id.* A review of reprehensibility includes consideration of whether (1) "the harm caused was physical as opposed to economic," (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," (3) "the target of the conduct had financial vulnerability," (4) "the conduct involved repeated actions or was an isolated incident," and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419, 123 S.Ct. 1513, 155 L.Ed.2d 585.

* * *

The second guidepost and the "most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Gore*, 517 U.S. at 580, 116 S.Ct. 1589, 134 L.Ed.2d 809. But the United States Supreme Court, like this court, has consistently rejected the notion of a bright-line mathematical formula for assessing the reasonableness of punitive damage awards. The court recognized that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Id.* at 582, 116 S.Ct. 1589, 134 L.Ed.2d 809. This court _has allowed a 6,250-to-one damages ratio to stand, but we have also invalidated a 20-to-one ratio. *See Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 1999-Ohio-119, 715 N.E.2d 546; *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121 (invalidating the award under Ohio's Due Process Clause). The court in *Gore* referred to the 500-to-one ratio in that case as "breathtaking." 517 U.S. at 583, 116 S.Ct. 1589, 134 L.Ed.2d 809._

* * *

The third indicium of excessiveness set forth in *Gore* involves "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." 517 U.S. at 583, 116 S.Ct. 1589, 134 L.Ed.2d 809. In announcing this guidepost, the court stated that a "reviewing _court engaged in determining whether an award of punitive damages is excessive should 'accord_ "substantial deference" to legislative judgment concerning appropriate sanctions for the conduct at issue.'" *Id.* at 575, 116 S.Ct. 1589, 134 L.Ed.2d 809, quoting *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.* (1989), 492 U.S. 257, 301, 109 S.Ct. 2909, 106 L.Ed.2d 219 (O'Connor, J., concurring in part and dissenting in part).

*Id.* at ¶ 33-34, 36.

{¶37} The *Barnes* Court cautioned that the *Gore* principles "must be implemented with care to ensure both reasonableness and proportionality" and that the court reviewing

an award of punitive damages for excessiveness "must independently analyze" the *Gore* factors. *Id.* at ¶ 40, citing *State Farm.*

**{¶38}** We begin by reviewing the degree of reprehensibility of Giant Eagle's conduct. Here, Rieger was physically injured when a Giant Eagle motorized shopping cart driven by Kurka struck into her shopping cart. Rieger sustained physical injuries as a result of this accident. While Giant Eagle knew of the history of motorized cart accidents at its grocery stores, Giant Eagle does provide the benefit of the use of motorized shopping carts to its disabled customers, and Rieger did not make any reference as to what Giant Eagle could have done differently to prevent future incidents. Therefore, we do not find Rieger proved by clear and convincing evidence that Giant Eagle's conduct was so reprehensible that the application of the punitive damages cap to the instant case is unconstitutional.

**{¶39}** Having found that Rieger did not satisfy the first *Gore* factor, we need not address the remaining factors.

**{¶40}** We are mindful that there is no magic formula for determining the proper amount of punitive damages. Rather, the amount that should be awarded is the amount that best accomplishes

> the twin aims of punishment and deterrence as to that defendant. We do not require, or invite, financial ruination of a defendant that is liable for punitive damages. While certainly a higher award will always yield a greater punishment and greater deterrent, the punitive damages award should not go beyond what is necessary to achieve its goals. The law requires an effective punishment, not a draconian one.

*Dardinger*, 2002-Ohio-7113, 98 Ohio St.3d 77, 781 N.E.2d 121, at ¶ 178.

**{¶41}** In light of the foregoing, we find that the $1,198,000 punitive damages award is unconstitutionally excessive. As a result, the punitive damages cap of R.C. 2315.21 is constitutional as applied to the instant case.

**{¶42}** Accordingly, the second assignment of error is sustained.

Prior Incidents Evidence

**{¶43}** In the fifth assignment of error, Giant Eagle argues the trial court erred by admitting the 179 incidents involving a motorized shopping cart at Giant Eagle stores. Giant Eagle contends the jury was tainted when the trial court admitted all 179 incidents "en masse" without any showing of substantial similarity to the accident in this case.

**{¶44}** Here, Giant Eagle objected to the introduction of all the 179 incident reports, renewing its arguments previously set out in its motion in limine. Giant Eagle also argued in the alternative that if the court chooses to admit the reports, the reports should be limited to the 117 prior incidents and the 62 post-2012 incidents should be excluded.

**{¶45}** We note that a "trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991), citing *State v. Withers*, 44 Ohio St.2d 53, 337 N.E. 2d 780 (1975), citing *State v. Hymore*, 9 Ohio St.2d 122, 224 N.E.2d 126 (1967). To constitute a reversible abuse of discretion, the trial court's ruling "must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of

will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 1996-Ohio-159, 662 N.E.2d 1, citing *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).

{¶46} Relevant evidence is defined in Evid.R. 401 as "[e]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).

{¶47} Rieger's negligence theory at trial was that Giant Eagle was liable for the injuries she sustained while shopping, when Kurka, who was driving the Giant Eagle motorized cart, ran into Rieger's shopping cart and pushed Rieger onto the floor. Rieger theorized that the existence of a duty owed by Giant Eagle is linked to Giant Eagle's foreseeability of the injury. The existence of 117 prior incidents involving incidents where a Giant Eagle customer was struck by a motorized cart at a Giant Eagle store demonstrates Giant Eagle's knowledge of these types of incidents.

{¶48} The standard utilized to determine the admissibility of prior incidents was enunciated by the Ohio Supreme Court in *Renfro v. Black*, 52 Ohio St.3d 27, 556 N.E.2d 150 (1990), where the court stated:

> The law in the area of admissibility of "prior accidents" or occurrence evidence was succinctly stated in *McKinnon v. Skil Corp.* (C.A.1, 1981),

638 F.2d 270. There, the court considered admissibility of prior accident evidence in a products liability action concerning an alleged defective Skil saw. The plaintiff attempted to introduce answers to interrogatories regarding prior personal injury accidents involving the Skil saw. The answers did not indicate how the injuries occurred or whether they resulted from defective lower blade guards. Plaintiff contended that the interrogatory answers were admissible on Skil's knowledge of prior accidents relevant to the duty to warn, to establish evidence of the existence of defect, causation, and negligent design, and to attack the credibility of the defendant's expert witness. The court held that "[evidence] of prior accidents is admissible on the first four issues only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. * * *" *Id.* at 277.

(Internal citations omitted.) *Id.* at 31.

{¶49} In reviewing the record, we find no abuse by the trial court in admitting evidence regarding the prior 117 incidents. The 117 prior incident reports all document similar accidents that occurred to a Giant Eagle customer who was injured after being struck by a Giant Eagle motorized cart while shopping. We find, however, that the admission of the 62 post-2012 incidents was harmless error that did not materially prejudice Giant Eagle.

{¶50} At trial, the deposition testimony of a Giant Eagle corporate representative was presented to the jury without objection by Giant Eagle. In his testimony, the corporate representative testified about the 179 electronic files related to incidents involving motorized carts at Giant Eagle grocery stores. Other than this testimony, Rieger did not reference the 179 total motorized cart incidents. Her argument referenced the 117 incidents involving motorized carts that occurred prior to Rieger's December 2012 accident. Whereas, Giant Eagle discussed the 179 motorized cart incidents during

its closing argument. As a result, we find the admission of the post-2012 incidents harmless.

**{¶51}** Therefore, the fifth assignment of error is overruled.

**{¶52}** Accordingly, judgment is affirmed in part, modified in part, and remanded. The compensatory damages award is affirmed, the $1,198,000 punitive damages award is modified, and the matter is remand for the trial court to enter an order setting the total amount of punitive damages awarded to $242,000.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR