[Cite as *MetroHealth Sys. v. Khandelwal*, 2022-Ohio-77.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

METROHEALTH SYSTEM,  :

    Plaintiff-Appellant,  :

    v.  :

ANJAY KHANDELWAL, M.D., ET AL.,  :

    Defendants-Appellees.  :

No. 109913

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 13, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932678

---

### *Appearances:*

Zashin & Rich Co., L.P.A., Jon M. Dileno, David P. Frantz, and Jeffrey J. Wedel, *for appellant.*

Walter|Haverfield L.L.P., Mark I. Wallach, and Jamie A. Price, *for appellee* Children's Hospital Medical Center of Akron; Frantz Ward L.L.P., Michael N. Chesney, and Angela D. Lydon, *for appellee* Anjay Khandelwal, M.D.

LISA B. FORBES, P.J.:

{¶ 1} Appellant, MetroHealth System ("MetroHealth"), appeals the trial court's decision granting in part and denying in part MetroHealth's motion for

preliminary injunction seeking to enforce a noncompete agreement against appellees, Dr. Anjay Khandelwal ("Dr. Khandelwal") and Children's Hospital Medical Center of Akron ("Akron Children's"). After reviewing the law and pertinent facts of the case, we affirm.

## I. Facts and Procedural History

{¶ 2} Dr. Khandelwal was recruited by MetroHealth in December 2013, from Arkansas to serve as a burn surgeon and associate director of MetroHealth's Comprehensive Burn Care Center ("Burn Center"). At that time, Dr. Khandelwal was a fully trained burn surgeon, serving as the director of the burn center at Arkansas Children's Hospital. His 2013 employment agreement with MetroHealth included a noncompete clause, which stated that he would "not provide consulting, medical expert or professional services similar to those [he provided] as an employee" within ten miles of MetroHealth for a period of one year after termination of employment.

{¶ 3} The scope of the noncompete agreement changed when Dr. Khandelwal executed a retention agreement with MetroHealth on June 11, 2015. Through that 2015 agreement, Dr. Khandelwal agreed that he would "not provide consulting, medical expert or professional services similar to those [he provided] as an employee of MetroHealth" within 35 miles of MetroHealth for a period of two years after terminating his employment with MetroHealth. Dr. Khandelwal was later promoted to codirector and eventually director of the Burn Center. In October 2019, Dr. Khandelwal's title was changed to interim director of the Burn Center.

**{¶ 4}** Dr. Khandelwal submitted his resignation from MetroHealth on March 4, 2020, effective June 2, 2020. Dr. Khandelwal had accepted the position of director of the Paul and Carol David Foundation Burn Institute ("Burn Institute") at Akron Children's, which is the only other verified burn center located within Dr. Khandelwal's 35-mile noncompete agreement.

**{¶ 5}** MetroHealth filed a complaint and motion for preliminary injunction seeking to enjoin Dr. Khandelwal from employment at Akron Children's in any capacity for two years, until June 1, 2022. The trial court held a three-day evidentiary hearing. MetroHealth called Dr. Jeffrey Claridge, Medical Director of MetroHealth Trauma Division and service line director of trauma burns and critical care to testify. Three witnesses testified on behalf of Dr. Khandelwal and Akron Children's: Dr. Khandelwal; Dr. John Crow, Akron Children's burn director and chief medical officer; and expert witness Dr. Kevin John Bailey, associate director and burn staff at Wake Forrest University's Baptist Medical Center. More than 40 exhibits were admitted into evidence.

**{¶ 6}** Following the hearing, the trial court issued a judgment entry granting in part and denying in part MetroHealth's motion for preliminary injunction, holding that (i) Dr. Khandelwal could begin employment as a burn surgeon with Akron Children's, (ii) he was "enjoined from assuming the position as Director of the Akron Children's Burn Institute until June 1, 2021," (iii) "he shall not use or transmit proprietary or privileged information obtained in the course of his employment with MetroHealth," and (iv) he may not "personally solicit or direct

anyone else to solicit any MetroHealth patient, employee or referral contact in an effort to increase patient census until June 1, 2021." In doing so, the trial court modified the scope and duration of the noncompete clause in the 2015 retention agreement. It is from this entry that MetroHealth appeals.

## II. Law and Analysis

{¶ 7} MetroHealth raises one assignment of error asserting that the trial court erred by failing to enjoin Dr. Khandelwal's employment with Akron Children's. MetroHealth argues the trial court erred when it modified Dr. Khandelwal's noncompete agreement by allowing him to perform services as a burn surgeon immediately and by limiting to one year the restrictions on other employment.

{¶ 8} "[T]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Century Business Servs., Inc. v. Barton*, 197 Ohio App.3d 352, 2011-Ohio-5917, 967 N.E.2d 782, ¶ 74 (8th Dist.), citing *Garono v. State*, 37 Ohio St.3d 171, 524 N.E.2d 496 (1988). A trial court does not abuse its discretion unless that decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} A party seeking a preliminary injunction must demonstrate that (1) there is a substantial likelihood of success on the merits of their claim; (2) the moving party will suffer irreparable injury without the requested injunction; (3) no parties will be unjustifiably harmed by the grant of the injunction; and (4) the public

interest will be served by the grant of the injunction. *AIDS Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 2018-Ohio-2727, 116 N.E.3d 874, ¶ 22 (8th Dist.). In determining whether to grant injunctive relief, trial courts must consider each of the four factors, and no single factor is dipositive as to whether the injunction should be granted. *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist.1996), citing *Royal Appliance Mfg. Co. v. Hoover Co.*, 845 F.Supp. 469, 153 F.R.D. 131 (N.D.Ohio 1994). Further, each case is to be determined on its own facts. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544 (1975).

{¶ 10} In its judgment entry, the trial court made specific findings under each of the four factors for granting injunctive relief. Upon review of the evidence presented at the hearing, we find that, in issuing its judgment entry, the trial court did not abuse its discretion

## A. Likelihood of Success on the Merits

{¶ 11} The trial court first looked at MetroHealth's likelihood of success on its breach-of-contract claim against Dr. Khandelwal. MetroHealth challenges the trial court's modification of the noncompete agreement, arguing that the trial court "improperly modified the terms of Dr. Khandelwal's non-compete by allowing him to immediately begin working for Akron Children's as a burn surgeon and by reducing the scope of the non-compete from two years to one year." We disagree.

{¶ 12} "In Ohio, noncompete and nonsolicitation agreements that are reasonable are enforced, and those that are unreasonable are 'enforced to the extent

necessary to protect an employer's legitimate interests.'" C*entury Business Servs., Inc. v. Urban*, 179 Ohio App.3d 111, 2008-Ohio-5744, 900 N.E.2d 1048, ¶ 12, quoting *Raimonde*, 42 Ohio St.2d 21, 325 N.E.2d 544, at paragraph one of the syllabus. "Courts are empowered to modify or amend employment agreements to achieve such results." *Raimonde* at 26. A noncompete agreement will be deemed reasonable when the moving party can demonstrate by clear and convincing evidence that the restrictions imposed "(1) are no greater than necessary for the protection of the employer's legitimate business interests, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public." *Barton*, 197 Ohio App.3d 352, 2011-Ohio-5917, 967 N.E.2d 782, at ¶ 75; *Raimonde* at paragraph two of the syllabus.

{¶ 13} When determining the reasonableness of a noncompete agreement trial courts are empowered to consider:

> "[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment."

*Raimonde* at 25, quoting *Extine v. Williamson Midwest, Inc.*, 176 Ohio St. 403, 406, 200 N.E.2d 297 (1964).

**{¶ 14}** While noncompete agreements in the medical profession are disfavored, they are not per se unreasonable. *Gen. Medicine, P.C. v. Manolache*, 8th Dist. Cuyahoga No. 88809, 2007-Ohio-4169, ¶ 12, citing *Ohio Urology, Inc. v. Poll*, 72 Ohio App.3d 446, 451, 594 N.E.2d 1027 (1991).

> A covenant restraining a physician-employee from competing with his employer upon termination of employment is unreasonable where it imposes undue hardship on the physician and is injurious to the public, the physician's services are vital to the health, care and treatment of the public, and the demand for his medical expertise is critical to the people in the community.

*Ohio Urology, Inc.* at 452, quoting *Williams v. Hobbs*, 9 Ohio App.3d 331, 460 N.E.2d 287 (1983).

**{¶ 15}** Here, the trial court acknowledged that a noncompete agreement will be "enforced to the extent that is reasonable[,]" finding that "the two year restriction in the 2015 retention agreement [was] unreasonable[,]" and modified the agreement to immediately allow Dr. Khandelwal to provide specialized services as a physician. The trial court determined that MetroHealth had not demonstrated a substantial likelihood of success on the merits of its breach-of-contract claim for the noncompete agreement as it was written, but that there was a substantial likelihood of success on the merits as the noncompete agreement was modified by the court.

**{¶ 16}** We consider MetroHealth's likelihood of success on the merits by assessing each of the three *Raimonde* reasonableness factors.

### 1. MetroHealth's Legitimate Business Interests

**{¶ 17}** It is the employer's burden to prove that there is a legitimate business interest to be protected. *Pratt v. Grunenwald*, 2d Dist. Montgomery No. 14160,

1994 Ohio App. LEXIS 2805 (June 29, 1994). "The prevention of ordinary competition is not a legitimate business interest that can be protected by a restrictive covenant." *Castillo-Sang v. Christ Hosp. Cardiovascular Assoc., L.L.C.*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, ¶ 23, citing *Busch v. Premier Integrated Med. Assoc., Ltd.*, 2d Dist. Montgomery No. 19364, 2003-Ohio-4709, ¶ 27. Noncompete agreements are valid only when they restrict unfair competition. *Gen. Medicine, P.C. v. Manolache*, 8th Dist. Cuyahoga No. 88809, 2007-Ohio-4169, ¶ 9; *Busch* at ¶ 17. A preliminary injunction can protect against unfair competition gained through the use of trade secret information such as "'customer lists, inside information, [and] special training.'" *Castillo-Sang* at ¶ 27, quoting *Pratt* at *2.

{¶ 18} MetroHealth argues that its legitimate business interest in seeking to enforce the noncompete agreement as written is to protect against unfair competition. In arguing that Dr. Khandelwal, as former director of the Burn Center, has knowledge of MetroHealth's strengths and weaknesses as a result of "[driving] the Burn Center's competitive and strategic mission for years * * *," MetroHealth claims that Dr. Khandelwal could aid Akron Children's in unfairly competing with MetroHealth through access to its referral sources and confidential information. According to MetroHealth, the evidence at the hearing demonstrated that MetroHealth and Akron Children's compete for burn patients in five counties: Medina, Trumbull, Portage, Geauga, and Huron. Further, "regardless of the past numbers, inroads can be made into a competitor's strongholds," particularly where

Dr. Khandelwal had developed "contacts" in Northeast Ohio through his role as leader of MetroHealth's Burn Center.

{¶ 19} Upon review, we find that the trial court did not abuse its discretion when it found that "Dr. Khandelwal's employment as a surgeon with Akron Children's will not threaten MetroHealth's ability to draw patients from the referral sources it had established, primarily through geographical considerations." While the trial court heard testimony that MetroHealth did have an established referral base system, Dr. Khandelwal testified that he did not intend to utilize MetroHealth's referral sources at Akron Children's. Dr. Khandelwal explained that referral sources for burn patients are not physician-specific. When asked if any of MetroHealth's referral sources ever referred a patient specifically to him, Dr. Khandelwal responded "[n]o, * * * referral work is basically built, the relationships were established between hospitals and the burn centers, they were never established between hospitals and myself."

{¶ 20} The court also heard testimony from Dr. Claridge and Dr. Crow, as well as Dr. Khandelwal, that burn patients oftentimes go to the burn center closest to them geographically. Dr. Khandelwal elaborated that the American Burn Association advocates for burn centers to educate hospitals and physicians to transport burn patients to the nearest burn center. Dr. Claridge testified that critical burn patients should go to the closest burn center because time is of the essence and doing so will provide the best outcome for that patient. Further, according to Dr. Crow's analysis of the Ohio Hospital Association Data from the past ten years

regarding the geographic areas from which the two hospital systems draw patients, "[t]he only county where there was overlap, we're talking four patients going one way, four patients going another is Medina County which is a border county and not surprising." Additional testimony demonstrated that a handful of patients from Trumbull, Portage, Geauga, and Huron counties go to either hospital. Dr. Crow further explained that Akron Children's Burn Institute sees 120-200 inpatient burn patients and roughly 4000 outpatient burn patients per year. While Dr. Crow explained that he did not have the data regarding how many patients MetroHealth's Burn Center sees, he stated that the Burn Institute is "about 25 to 50 percent busier than Metro."

{¶ 21} A review of the record demonstrates the court actively participated during this portion of questioning, following along with the witnesses and plaintiff's counsel to review the Ohio Hospital Association Data. In light of the evidence elicited at the hearing, the trial court did not abuse its discretion when it allowed Dr. Khandelwal to practice medicine as a burn surgeon in Akron immediately but prohibited him from soliciting referral sources for one year. It was not arbitrary, unreasonable, or unconscionable for the trial court to conclude that the noncompete agreement as written, with its two-year, 35-mile restriction on the practice of medicine, went beyond protecting MetroHealth against unfair competition.

{¶ 22} The trial court treated Dr. Khandelwal's administrative role differently, restricting him from assuming a leadership role at Akron Children's

Burn Institute for one year. MetroHealth argues that the trial court abused its discretion in modifying the noncompete from two years to one year. We disagree.

{¶ 23} We find that this decision was within the court's sound exercise of its discretion because the business of running a burn center can be considered proprietary. The court heard testimony from Dr. Claridge, that through Dr. Khandelwal's leadership roles at MetroHealth's Burn Center, Dr. Khandelwal was exposed to pricing structures, profit and loss statements, audits, and other proprietary information related to running MetroHealth's verified burn center. To protect against any potential unfair competition, the court enjoined Dr. Khandelwal from serving as director for one year and from using or transmitting any of the proprietary business information that he gained through his previous position as director of MetroHealth's Burn Center. In short, evidence presented at the hearing supported the trial court's finding that the 2015 noncompete agreement was more restrictive than necessary but that it could be modified to protect MetroHealth's legitimate business interests.

{¶ 24} This court has previously acknowledged that two-year noncompete agreements are not the standard practice and that, when analyzing whether the time restraint is enforceable, courts should analyze on a case-by-case basis. *Harris v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 76724 and 76785, 2002 Ohio App. LEXIS 1032 (Mar. 7, 2002). A modification from two years to one year has been upheld as a proper exercise of the trial court's discretion. *See Holzer Clinic, Inc. v. Simpson*, 4th Dist. Gallia No. 97CA9, 1998 Ohio App. LEXIS 2044, 6 (Apr. 28,

1998) (upholding the trial court's preliminary injunction modifying the noncompete term from two years to one year).

{¶ 25} Here, the trial court heard testimony that MetroHealth and Akron Children's do not meaningfully compete for patients because, as noted, typically burn patients go to the burn center closest to them. Under the facts and circumstances of this case, MetroHealth has not demonstrated that the trial court's decision to reduce the time frame from two years to one year was "palpably and grossly violative of fact or logic * * *[;] not the exercise of reason but instead passion or bias." *Reiger v. Giant Eagle, Inc.*, 2018-Ohio-1837, 103 N.E.3d 851 (8th Dist.), *rev'd*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121 (describing what must be shown to establish reversible abuse of discretion).

{¶ 26} MetroHealth also argues that the trial court erred by not considering its likelihood of success on the merits of each of its claims against Dr. Khandelwal and Akron Children's, including misappropriation of trade secrets, and tortious interference with contract. We disagree.

{¶ 27} As an initial matter, the court did not disregard MetroHealth's other claims. The trial court's order specifically notified the parties that "remaining claims against Dr. Khandelwal and Akron Children's Hospital remain pending and will be resolved in separate proceedings." Further, in the context of MetroHealth's breach-of-contract action, the trial court addressed MetroHealth's concern for the loss of confidential information. The trial court enjoined Dr. Khandelwal from using or transmitting to Akron Children's or anyone else information that is not in the public

domain regarding the strengths and weaknesses of MetroHealth's trauma and burn care operations, profit and loss statements, business procedures, and financial information known to Dr. Khandelwal. This injunction was not subject to the one-year time limit. It is notable that MetroHealth has not demonstrated how the outcome would have differed had the trial court assessed each of the other claims in issuing the preliminary injunction. Accordingly, we find that the trial court did not abuse its discretion in only addressing MetroHealth's likelihood of success on the merits of its breach-of-contract claim.

### 2. Undue Hardship on Dr. Khandelwal

{¶ 28} Turning to the second reasonableness factor, we consider whether the noncompete agreement would impose an undue hardship on Dr. Khandelwal. The trial court considered the unique skills possessed by Dr. Khandelwal and his connections to the area 35 miles around MetroHealth. *See Owusu v. Hope Cancer Ctr. of Northwest Ohio, Inc.*, 3d Dist. Allen No. 1-10-81, 2011-Ohio-4466, ¶ 28 (analyzing the connections a physician had with the restricted area in deciding whether the noncompete agreement was unduly burdensome on the physician); *Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 37-40 (requiring a surgeon to move from Cincinnati to Columbus, away from his wife and children, to work outside a noncompete agreement's restricted area created an undue hardship on the surgeon).

{¶ 29} Regarding his employment as a surgeon, Dr. Khandelwal testified that, due to his specialty, he can only work in a verified burn center. He explained,

"[m]y primary passion is burns, that's what I've been trained to do, that's what I'm interested in doing, that's what I've been involved with my entire career * * * so for me to work at a hospital that doesn't have a burn center doesn't make sense." The only verified burn centers in Northeast Ohio are at MetroHealth and Akron Children's, both within the 35-mile restricted area in the noncompete agreement. Additionally, the court heard testimony that if Dr. Khandelwal was not permitted to perform burn surgery for the two-year period of the 2015 noncompete agreement, he would have difficulty getting credentialed after that two-year period. Dr. Claridge testified that data suggests that the more trauma and burn surgeons practice their specialties, the better they perform, leading to better outcomes for the patients. If Dr. Khandelwal were not able to perform surgeries for two years, not only would it be detrimental to him and his career, but also to the outcome of burn patients.

{¶ 30} MetroHealth suggested that Dr. Khandelwal could work at hospitals that have temporary physician openings, known as locum tenens, to continue practicing medicine as a burn surgeon outside of the noncompete agreement's 35-mile restricted area. However, Dr. Khandelwal testified that he was unaware of any locum tenens positions for burn surgeons. Further, the trial court found that locum tenens work may still place an undue hardship on Dr. Khandelwal because of the frequent out-of-state travel, particularly during the pandemic.

{¶ 31} Dr. Khandelwal and his family live in Cuyahoga County and, aside from MetroHealth, "the closest burn center where he can continue performing burn surgeries is in Akron." While Dr. Khandelwal is not originally from the Cleveland

area, the trial court found that he and his family have developed "roots" in the community, which was supported by the evidence presented at the hearing. Dr. Khandelwal testified that he and his wife moved to Cleveland from Arkansas because it was one of the few places in the country that could support both of their specialties and careers. Dr. Khandelwal's wife serves as the trauma medical director for Cleveland Clinic's Fairview Hospital. As part of her employment, she is required to live within 15 minutes of Fairview Hospital. Additionally, the Khandelwals have two young daughters that they have raised in the Cleveland area.

{¶ 32} Based on the evidence presented at the hearing, the trial court did not abuse its discretion in determining that preventing Dr. Khandelwal from working as a surgeon at Akron Children's for the injunctive period would create a professional and familial undue hardship.

{¶ 33} On the other hand, enjoining Dr. Khandelwal from serving as an administrator at Akron Children's would not impose the same undue burden because it would not deprive Dr. Khandelwal of his sole means of income. Allowing Dr. Khandelwal to continue practicing as a burn surgeon provides him the opportunity to practice his specialty while continuing to hone his unique skills, make a living, and stay with his family.

### 3. Injury to the Public

{¶ 34} Finally, evidence in the record supports the trial court's finding that the noncompete agreement, as written, would be injurious to the public because Dr. Khandelwal would not be able to care for patients by performing burn surgeries.

Specifically, the trial court noted that "[t]he national pool of burn surgeons is somewhat limited and the restraint on Dr. Khandelwal to perform as a highly skilled burn surgeon would deny the general public crucial access to needed care."

{¶ 35} MetroHealth argues that because Northeast Ohio has two verified burn centers it "is uniquely situated with optimal burn care coverage" and, for that reason, the trial court erred in finding that the public would be injured if Dr. Khandelwal were not able to practice as a burn surgeon for the full two-year injunction period in the 2015 retention agreement. We disagree.

{¶ 36} In *Frederick D. Harris, M.D Inc. v. Univ. Hosps. of Cleveland,* this court recognized that modification of a noncompete agreement can be proper where the public would face potential harm from losing a highly skilled and specialized physician. In contrast to the facts demonstrated at the hearing here, in *Frederick D. Harris*, the court enforced the noncompete agreement as written where the doctor was

> an internist and [had] not claimed to be schooled in a unique field or trained in a particular procedure known only to him or a very limited number of physicians in the Cleveland metropolitan area. As such, there is no evidence in the record to support a claim that public policy demands that [an internist] practice medicine in violation of the restrictive covenants.

*Frederick D. Harris, M.D., Inc. v. Univ. Hosps. Of Cleveland*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002-Ohio-983, 2002 Ohio App. LEXIS 1032 (Mar. 7, 2002). *See also Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 41 (holding that when a highly skilled physician can create better outcomes for

patients, the fact that the public has access to other options for care does not mean it would not be injured by the loss of that doctor's abilities).

{¶ 37} In the case at hand, the trial court heard testimony that because of Dr. Khandelwal's unique specialty, the public would be injured by losing his abilities as a practicing physician for any period. Dr. Khandelwal explained "[b]urns are not a specialty that many people choose to go into." After completing medical school and residency, Dr. Khandelwal completed two separate fellowships: a burn fellowship and a surgical critical care fellowship. Dr. Khandelwal explained that his combination of fellowships is unique in the United States, with an estimated 50 to 75 doctors in the entire country having both. If Dr. Khandelwal was not able to practice as a highly trained burn surgeon, the public would lose the benefit of his expertise in burn care. Further, as discussed, by restricting Dr. Khandelwal from practicing burn surgery he would have a difficult time getting credentialed to practice after the injunctive period. This would result in further injury to the public.

{¶ 38} Based on the foregoing reasonableness factors, the trial court did not abuse its discretion in finding that MetroHealth only demonstrated a likelihood of success on the merits of its breach-of-contract claim to the extent that its noncompete agreement was modified by the trial court.

## B. Irreparable Injury

{¶ 39} Considering whether MetroHealth would suffer irreparable injury unless the agreement is enforced as written, the trial court acknowledged that Dr. Khandelwal was at one point in possession of MetroHealth's "privileged material."

But evidence presented at the hearing demonstrated that those materials had since been returned or destroyed. Dr. Khandelwal testified that he did not take any strategic plans, proprietary protocols, patient information, or any other proprietary information in anticipation of leaving MetroHealth. With regard to certain disputed materials that were digitally stored, Dr. Khandelwal testified that those had been deleted. The court noted that any other information that Dr. Khandelwal possessed that was not in the public domain was "privileged and proprietary" and enjoined Dr. Khandelwal from using or transmitting this information.

{¶ 40} In light of the evidence presented, the trial court did not abuse its discretion in concluding that MetroHealth would not suffer irreparable injury by allowing Dr. Khandelwal to provide services as a burn surgeon immediately upon leaving MetroHealth and by enforcing the noncompete for only one year in regard to Dr. Khandelwal's service as an administrator.

### C. Unjustifiable Harm to Other Parties

{¶ 41} Considering whether the preliminary injunction would harm others, the trial court echoed the findings under its reasonableness analysis. Restraint on Dr. Khandelwal's ability to "perform as a highly skilled burn surgeon would deny the general public crucial access to needed care[,]" and "he must be able to impart his knowledge and expertise to his fellow physicians in the industry."

{¶ 42} As previously mentioned, if Dr. Khandelwal was restricted from preforming burn surgeries for any period time, the public would suffer. Testimony demonstrated that patient outcomes are better when physicians are able to continue

practicing their specialties. If Dr. Khandelwal was restricted from providing patient care, unjustifiable harm to third parties would result. *See Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 21 (finding that the public would be harmed by restraining a specialized surgeon's ability to continue performing surgeries).

### D. Public Interest

{¶ 43} While the trial court acknowledged it is in the public interest to enforce clear and unambiguous contracts, the evidence supported the trial court's conclusion that the public interest would not be served by denying burn patients access to Dr. Khandelwal's skills as a burn surgeon due to his unique training and expertise. The court enjoined Dr. Khandelwal from serving as director of the Burn Institute, enforcing a portion of Dr. Khandelwal's noncompete agreement. Again, the trial court did not abuse its discretion.

## III. Conclusion

{¶ 44} In the instant case, the trial court analyzed each of the four factors for granting injunctive relief, including the three sub-factors for assessing the likelihood of success on the merits. In doing so, the court made specific findings under each factor that were supported by evidence presented at a hearing. Those findings supported the trial court's decision to issue an injunction, albeit not to the extent that MetroHealth sought. The trial court's decision was not arbitrary, unreasonable, or unconscionable. Accordingly, the trial court did not abuse its discretion in

granting in part and denying in part MetroHealth's motion for preliminary injunction. MetroHealth's assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR